F49JMACC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        13 Cr. 811 ALC

ANDY MACCOW,

                Defendant.

------------------------------x

                                      April 9, 2015
                                      2:40 p.m.


Before:

                HON. ANDREW L. CARTER, JR.,

                                      District Judge


                    APPEARANCES

PREET BHARARA,
     United States Attorney for the
     Southern District of New York
SEAN S. BUCKLEY,
     Assistant United States Attorney

DOAR, RIECK, KALEY & MACK
     Attorneys for defendant Maccow
BY:  WALTER STAUNTON MACK, JR., Esq.
            Of counsel


Also Present:
     EMILY FRANKELIS,
     U.S. Probation Officer SDNY

```
 1              (In open court)

 2              (Case called)

 3         THE COURT:  You may be seated.  Good afternoon.  Good

 4    afternoon, Mr. Maccow.  We're here today to impose sentence in

 5    the case of the United States versus Andy Maccow.

 6              In preparation for today's sentencing, I have received

 7    a sentencing submission from the defense, dated March 6th,

 8    along with a psychological report, dated January 26th, 2015.

 9              I have received a letter from the government and a

10    supplemental letter from the defense as well.  Obviously, I've

11    reviewed the presentence report.  Is there anything else -- I

12    also have a Victim Impact Statement, dated April 1st, 2015 --

13    is there anything else I should have, counsel for the

14    government?

15         MR. BUCKLEY:  Not from the government, your Honor.

16         THE COURT:  Counsel for the defense?

17         MR. MACK:  Your Honor, I don't believe so, but I do

18    want to indicate what our position would be in light of the

19    delivery of the government's letter last night about 11:40 pm

20    to us, that we are not ready for sentence.

21         THE COURT:  Your position is what?

22         MR. MACK:  We are not prepared for sentence because we

23    did not have the week the rules require for response.  I didn't

24    want the sentencing to get under way too far without the court

25    being aware of that.
```

1    THE COURT:  Okay.  I will certainly give you time to

2    be better prepared.  Give me a sense in terms of what sort of

3    information that you need and will be seeking that I can make

4    sure that I am prepared as I can be.

5    MR. MACK:  Well, the government went from the court

6    should give three levels for acceptance of responsibility up

7    until 11:30 last night, and now they are taking the view that

8    we don't get three levels of acceptance.

9    Their reasoning for that is that my client is prepared

10   to perjure himself on the stand with respect to his prior

11   statements.  So if the government is going to persist, that was

12   a complete change of view.  Up until 11:40 last night, their

13   view was the plea agreement complied, we are bound by it.

14   If, in fact, now their position is as explained to me

15   in their position last night was that since my client is now

16   going to take the stand or respond to your Honor's questions on

17   the obstruction count differently than what he said when he was

18   arrested in 2013, that is proof that he is no longer worthy of

19   an acceptance of responsibility level decrease.

20   I am going to ask the court for a hearing of some kind

21   because I believe that it may very well be certain that that

22   prior statement which they are relying on, which was never

23   tested in suppression, never went to motions in the case, that

24   it is inconsistent with the law in this circuit and it is

25   unfair to the defendant.  It is certainly unfair to the

1    defendant to hit him with it on the eve, on the actual

2    morning -- I didn't see it until after midnight this morning.

3              THE COURT:  Okay.  Counsel for the government, is

4    there anything you want to add on that?

5              MR. BUCKLEY:  Yes, your Honor.  To be clear, I think

6    Mr. Masimore's letter and the government's position is that the

7    calculations, the guidelines calculations as performed by the

8    Probation Office are correct as set forth in the presentence

9    investigation report.

10             Mr. Masimore's letter acknowledges that because it

11   recognizes that as part of sentencing under 3553, your Honor is

12   obligated to undergo a guidelines calculation.  So I think that

13   was the acknowledgment made by Mr. Masimore in conceding that

14   the Probation Office's calculations were correct.

15             At no point -- and I think Mr. Masimore's letter is

16   very clear on this point -- at no point does the government

17   indicate it intends to break its plea agreement or argue for a

18   sentence outside of the range, the stipulated range set forth

19   in the parties' plea agreement.  I don't think that is actually

20   an issue here.

21             With respect to Mr. Mack's statement that he intends

22   to call the defendant to the stand at sentencing and that he

23   anticipates that the defendant under oath will contradict

24   statements that he previously made after receiving Miranda

25   warnings to the arresting agents, I think we may be in a

1   situation, your Honor, where it becomes necessary for there to

2   be a Fatico hearing.  If the defendant is arguing he did not,

3   in fact, make those statements, then the government is entitled

4   to put on evidence to refute that claim and to show that he

5   did, in fact, make those statements.

6          THE COURT:  Okay.  Thank you.  Let's talk about some

7   of these issues.  We won't go forward with the sentencing

8   today, but let's deal with some of these other issues.  There

9   were other objections that defense counsel had to the

10   presentence report.  I want to address some of those as well in

11   addition to this objection.

12          If we can, let's see if we can deal with some of these

13   now.  If counsel are ready to deal with some of these

14   objections, let me just put on the record and make sure we're

15   clear on the record here, Mr. Maccow, have you had an

16   opportunity to go over the presentence report with your

17   attorney and discuss any objections you might have to it?

18          THE DEFENDANT:  Certainly.

19          THE COURT:  I have received objections from the

20   defendant, through counsel.  I don't believe there are any

21   objections from the government to the presentence report.

22          Is that correct?

23          MR. BUCKLEY:  There were, your Honor, but as set forth

24   in the government's letter, we have withdrawn those objections.

25          THE COURT:  Okay.  So let's talk about some of these

F49JMACC                    Conference

1    other objections here.  The first objection, I am looking at

2    Exhibit 3 of the defendant's initial submission on March 6th,

3    2015, Mr. Maccow objects to the term "aliases," okay?

4         That is fine.  He says that his name is Andy Hector

5    Maccow Checco; and, therefore, any different names that were

6    given when he was arrested on other occasions were not really

7    aliases, they were just different versions of his name.

8    Counsel for the government, any position on that?

9         MR. BUCKLEY:  Your Honor, a different version of a

10   name is an alias.  It is an alternative means of referring to

11   somebody.  I don't think it is material to the sentence your

12   Honor is going to impose.  If the defendant acknowledges that

13   he went by those alternate names, we're fine having "alias"

14   stricken from the presentence report.

15        THE COURT:  Counsel for the defense, I don't find this

16   particularly probative of anything.

17        MR. MACK:  It isn't although my argument would be the

18   Probation Department has proposed a recommendation that is

19   inappropriate for this defendant and that this is some sign

20   that when they want to use and make a decision that is harmful

21   to the defendant, they choose to do so.

22        Could I just mention one thing, just to introduce Mr.

23   Checco is in the courtroom today.  The fact that this was

24   adjourned from the 8th because we didn't know what the

25   government was going to say until last night, there were many

F49JMACC                    Conference

1    more people who had planned to be here on the 8th.  We presumed

2    that the government would adhere to its position and the

3    sentencing would occur, and so the fact when a sentence does

4    get adjourned at the last moment, at least if it is not a half

5    hour, the impact often on working family members, there would

6    have been other people here today of some consequence.

7            THE COURT:  Let's go to the next objection by the

8    defense, February 25th, 2011, at Page 8, Paragraph 15, the

9    defendant claims that the defendant did not participate in this

10   burglary.  I want to make sure I'm clear as to what your

11   objection is.  Is the objection to the factual statement there?

12           I don't think that the statement in the presentence

13   report claims that Mr. Maccow was present at the burglary, but

14   that he was in contact by cell phone with other individuals.  I

15   am not sure exactly what your objection is.  Are you objecting

16   to -- there is no statement in the presentence report claiming

17   he was actually present when this burglary took place, that he

18   was speaking on the cell phone with the individuals who were

19   actually participating in the burglary.

20           MR. MACK:  Maybe I should parse that out more

21   carefully, but that is the burglary the probation officer picks

22   out to do the computation.  I do have a presentation here to

23   make eventually at sentence, but that is the burglary they pick

24   out to do their computation for the guidelines.  He is not even

25   there.  I think he is in jail in 2011 anyway.

F49JMACC                        Conference

1         THE COURT:  That certainly doesn't mean he is not

2    guilty of a conspiracy or guilty of acting in concert if he is

3    speaking on the phone.  I am trying to parse out what your

4    objection is.  If your objection is he did not participate in

5    any way, he wasn't on the phone, again I want to make sure we

6    have all of this clear so if we have a hearing, we can have a

7    hearing on all of this.

8         MR. MACK:  Right.

9         THE COURT:  It seems that the position that in the

10   probation report is that he was not actually present, but he is

11   accountable for what happened during the burglary because it

12   was part of the conspiracy, and he was part of that acting in

13   concert with them and he was speaking on the telephone with

14   them and they're in constant contact on the cell phone with him

15   while the burglary was taking place.

16        MR. MACK:  If I read the paragraph, it mentions three

17   people including Maccow, and the second sentence says they

18   stole tablets.  It certainly isn't clear to me they're

19   excluding Andy Maccow from participating.

20        THE COURT:  It says in the very first sentence of

21   Paragraph 15, Edwin Araujo was present during this burglary and

22   was in repeated contact by cell phone with Miguel Araujo and

23   Andy Maccow at the time.

24        MR. MACK:  I don't think that is true, number one.  I

25   asked my client that because I read the next sentence to say

1    they, including all three of them, stole tablets.  He wasn't

2    there.

3              THE COURT:  Again I am not sure it is necessary that

4    he be there.  Perhaps he was there.  The government have any

5    information on this at this time?

6              MR. BUCKLEY:  No, your Honor, other than your Honor's

7    understanding of what is set forth here is correct from the

8    government's perspective.  The allegation -- not the

9    allegation -- the statement contained in Paragraph 15 of the

10   presentence report reflects that this defendant as a

11   co-conspirator was involved in this burglary.

12             It does not claim that he was present for the

13   burglary, but rather that he was in contact with at least two

14   other individuals, one of whom was physically present at the

15   burglary.  Thus, the use of "they" in that paragraph is

16   perfectly accurate.  The defendant has pleaded guilty to

17   conspiracy charges here.  I don't think that there is any basis

18   to the objection as phrased or as clarified further by Mr.

19   Mack.

20             MR. MACK:  Could I respond to that, your Honor?

21             THE COURT:  Yes.

22             MR. MACK:  I wouldn't want to waste the court's time

23   on this.  We got a list of burglaries when the heavy

24   negotiations went on much earlier about what this plea would

25   be, and we got a list of I believe it is eight pharmacies in

F49JMACC                     Conference

1    which the government felt that my client had some

2    responsibility for, and there was a major part of the

3    discussion, and it will come up now, that the government has

4    retreated from their plea agreement, but this was not one of

5    them.  So this came out of the blue.

6              I haven't had a moment to talk to him whether he -- I

7    think he was in jail at the time.  I will check.  I don't know

8    the answer to the question whether he is on the phone, but I

9    certainly don't see any ambiguity about they stole tablets,

10   meaning they took the tablets out of a pharmacy.  Maybe I am

11   old fashioned on that.  It is not clear.

12             THE COURT:  One thing that is an overarching concern

13   in some of the submissions from defense counsel and some of the

14   arguments here, you keep referring to the plea agreement and

15   what is in the plea agreement.  Obviously, the plea agreement

16   is not binding on the Probation Department.  It is not binding

17   on me.  I have to do my own independent evaluation of the

18   guidelines, and the fact that something may not be covered in

19   the plea agreement is sort of inapposite in terms of me doing

20   my own independent evaluation of the guidelines and for the

21   conduct that is involved in this offense.  I just wanted to

22   state that just generally.

23             We'll move on because there are some other things I am

24   really more concerned about, some of those comments from

25   counsel regarding the plea agreement.  Your next objection is

F49JMACC                    Conference

1    to Page 9, Paragraph 19 to 21, you say David Santiago did not

2    participate in any of these burglaries.  I am not sure what

3    that has to do with Mr. Maccow's case.  What is the purpose of

4    that objection?

5             MR. MACK:  The only purpose of that is that Mr. Maccow

6    not acquiesce in something he did not believe to be true.

7             THE COURT:  A larger objection, your next objection

8    deals with the facts of the obstruction of justice enhancement,

9    and you go on and on about what you claim or what Mr. Maccow

10   claims happened during this.

11            I guess what I am concerned about is a couple of

12   things.  You say that this may be inconsistent with what the

13   government claims, that your version may very well be

14   inconsistent with what the government claims Mr. Maccow said

15   when he was given his Miranda rights.  What I am also concerned

16   about is what Mr. Maccow said when he pled guilty, with counsel

17   next to him, to obstruction of justice, and I have that portion

18   of his allocution here in front of me.

19            Obviously for the enhancement to apply, there has to

20   be a circumstance in which Mr. Maccow engages in conduct with

21   the intent to obstruct justice, with the intent to somehow

22   affect a criminal proceeding.  What you have indicated in your

23   objection seems to sort of vitiate any intent to obstruct any

24   proceeding.  It seems as if you're saying this is almost some

25   sort of just self-defense, that he was just making an innocent

1    inquiry and that the other individual started yelling at him,

2    and he just hit him without any intent to obstruct justice.

3         MR. MACK:  May I respond?

4         THE COURT:  Hold on.  What he said at the time when he

5    pled guilty, with counsel next to him, at a portion when he is

6    talking on Page 25 of the transcript, he says:

7         Again from at least 2008 until around October 30th,

8    2013, I did agree with others that the Schedule II drugs,

9    including oxycodone and oxymorphone, that I with others took

10   from a pharmacy burglarized would be distributed and sold by

11   others for profit.

12        Around May 19th, 2012, in the Southern District of New

13   York, I lost my temper and struck a person who I believed was

14   providing information to the police or other law enforcement

15   people that were harming my friends in a criminal

16   investigation.  Then there was a discussion off the record

17   between defendant and counsel, and then he continues -- to stop

18   them from providing information to law enforcement.  That is

19   what he indicated in his allocution when he pled guilty to

20   obstruction of justice.

21        MR. MACK:  I understand that, your Honor.

22        THE COURT:  Can you give me a sense as to, it sounds

23   as if what you're saying is inconsistent what he said during

24   his plea.

25        MR. MACK:  I don't believe it it is, your Honor, for

1    this reason.  This was a matter of discussion at some length

2    early on.  I am hesitating to mention, but the point being is

3    this:  There is no question that when he started to go after,

4    if that is the right word, he did not expect to see him.  The

5    statement that is proffered by the government, hey, let's get

6    together, go out look for this guy and do damage to him.

7            The reality at least from my client, I went over this

8    very carefully with my client, he did not expect to see this

9    person.  When he did see him, he confronted him and asked him

10   questions, why are you doing this?  Why are you doing that?

11   Why is your lawyer not having other people there?

12           In my view, the only difference is the intent to

13   obstruct and intimidate rather than being some plan that

14   occurred well before the street encounter.  It occurred when

15   they met together, not expecting that to happen, and these are

16   the facts, but he intended, and the purpose of the conversation

17   was he was interrogating this guy why are you cooperating?

18           And that is what happened.  It was not a planned

19   meeting, hey guys, let's get together and go out and find this

20   guy.  It was something unexpected.  But when he chose to speak

21   with him and get cross with him and combat, get into a fight,

22   it was designed to discourage him from further cooperation, and

23   that is why, that is an obstruction of justice, at least as I

24   see it.

25           THE COURT:  Can you give me a sense as to why then

14

F49JMACC                        Conference

1    under your facts that distinction makes a difference?

2              MR. MACK:  It makes a difference because the intent.

3         It was the intent to affect this guy and obstruct

4    justice.  It just didn't go on for a long period of time.  It

5    started on the street on a meeting that was not planned, a

6    happenstance meeting in which, hey, here is this guy, we have

7    questions for him, we're going to find out what he's doing.  To

8    me, it is just a question of when that intent was formed.  He

9    is still guilty, but he is not a person who gets together and

10   goes out looking, let's find this guy and do something to harm

11   him.

12        That is the difference, and I am suggesting it is more

13   accurate, and that is what my client says happened.  It is not

14   inconsistent with his plea because he, in fact, is

15   acknowledging hey, I wouldn't have talked to this guy unless I

16   thought he was cooperating against me or my colleagues.  It was

17   more than a conversation.  It was a hostile conversation.

18        And they got into a fight, and so I don't see that the

19   plea allocution is inconsistent.  I am not trying to withdraw

20   the plea.  I am simply saying that basically the facts were

21   different.

22             THE COURT:  Okay.  Counsel, for the -- I mean, that is

23   fine.  I take counsel's proffer.  We can certainly have a

24   hearing on this if that is what we need to do.  Again I am not

25   sure how much that distinction makes a difference.  I am not

1    sure if it is better, which is better, that he actually planned

2    to in a targeted way go hurt this individual --

3              MR. MACK:  Your Honor --

4              (Simultaneous voices)

5              THE COURT:  -- or he on the spur of the moment decided

6    to get into a violent encounter with someone because he

7    happened to see them.  I am not sure which is necessarily

8    better or worse in terms of the history and characteristics of

9    the defendant.

10             MR. MACK:  The government certainly argues the former

11   is much worse and he should be punished and denied acceptance

12   of responsibility for it.

13             THE COURT:  I don't think that is the government's

14   position.  I think the government's position is that the former

15   is what happened.  I don't think the government is taking the

16   position one is worse or better than the other.  The

17   government's position is that -- let me not speak for the

18   government.  What is the government's position on that?

19             MR. BUCKLEY:  Your Honor, again I think we are pretty

20   much in agreement with the court's interpretation here.  One

21   additional thing I would point out is that in the course of his

22   presentence interview, in the presence of defense counsel, the

23   defendant gave yet a different account of what transpired, and

24   that is at Paragraph 46 of the presentence report.

25             In that account, contrary to Mr. Mack's

F49JMACC                    Conference

1    representations and his submission and here today, the

2    defendant states that he went to the victim's neighborhood to

3    ask him why he was cooperating.  That appears to be on all

4    fours with his post-arrest statement, which is simply that in

5    May 2012 Araujo and Gonzalez heard that the CW was in the

6    vicinity and they went to confront him.

7            At the end of the day when the rubber meets the road,

8    your Honor, the simple fact is the defendant decided to

9    confront the cooperating witness, that he decided to do so with

10   an intent to deter the cooperating witness from engaging in

11   further conduct.  The account provided in the presentence

12   report, in his post-arrest as well as at his plea allocution

13   are all consistent in every material respect, and they are

14   sufficient to establish the abhorrent and culpable behavior

15   here which is what the defendant pleaded guilty to.

16           Again the government's position is that it is going to

17   continue to abide by the terms of its plea agreement.  It

18   continues to argue only for the stipulated range set forth in

19   that plea agreement.  However, we acknowledge that the

20   Probation Office was correct in following the guidelines and

21   crafting a guidelines calculation that does not award

22   acceptance of responsibility points.

23           THE COURT:  Let me just ask defense counsel something

24   else I guess related to this.  Also I am a little concerned

25   that in further objections on Page 3 of your submission, that

1   last paragraph, going to 13, Paragraph 14, and you indicate

2   although initially seeking trial, he accepted responsibility

3   within the government's timetable, agreed to an obstruction

4   count despite his counsel's misgivings.

5           Again, it is inappropriate for me to start getting

6   into attorney-client communications.  It is inappropriate for

7   me to get into the meat of the negotiations between the parties

8   regarding plea agreements and the like, but you put this

9   statement here, and I am just concerned with this floating out

10  here talking about counsel's misgivings.

11          Again I have the minutes from the plea allocution when

12  Mr. Maccow pled guilty with counsel there, and I asked counsel

13  at the end of the allocution if he knew of any legal defense to

14  any of the charges.  Counsel said no.  I asked if there is any

15  reason why Mr. Maccow shouldn't plead guilty, and counsel said

16  no.

17          That just, I am wondering, I want to make sure there

18  is no issue with any conflict of interest or anything like that

19  going on in terms of this statement that is tossed out there.

20          MR. MACK:  Your Honor, I respect that.

21          What I am saying is my misgivings, there was never a

22  question, once I got the facts from my client with the

23  specificity that I have described in our objections, that I

24  thought he was guilty, but when I compared what the

25  government's agents have written about what he said under the

1    circumstances with what he told me was true, and believe me, I

2    spent a lot of time thinking about this, and my initial

3    misgivings were based upon what the government says he said

4    when he was arrested, which is where we are going to end up

5    combating.

6         I have no misgivings about once I got what I

7    considered the truth from the defendant whether he should plead

8    guilty or not, which is something the government insisted upon.

9    I am not saying your Honor we want to withdraw our plea.  He

10   shouldn't have pled.  I am saying on the contrary, it is just a

11   different fact and circumstance situation than the government

12   has portrayed it, that is all.

13        He is still guilty and that is with that word

14   misgivings, they were initially, and I said initially, yes, so

15   the point was when I first started off, I was saying hey, this

16   is what you said when you were arrested.  Is that true?

17        And we went from there to what version of the facts as

18   my client reports them, which in my understanding of the law is

19   that he is still guilty of obstruction of justice, and he pled,

20   and I have no misgivings whether he should plead and no

21   misgivings whether he was guilty.

22        THE COURT:  Okay.  And then further on Page 4 and Page

23   5 of defense counsel's submission, you talk about how the

24   defense stands by the offense level computation set forth in

25   the plea agreement.  On Page 5 you state that the plea

agreement offense level in this matter was a subject of

detailed negotiation over an extended period.  Under no

circumstances would the defendant have pleaded guilty to a

charging instrument which denied him acceptance of

responsibility credit and added enhancement to a

non-obstruction count for obstruction, and also required him to

plead to a substantive obstruction count, and then you add the

Probation Department has simply chosen an offense calculation

at the highest level in order to warehouse the defendant it

does not appreciate or respect.

I guess, first of all, that last sentence, I am not

sure where this sense is coming from, the Probation Department

has some sort of grudge against Mr. Maccow, but be that as it

may, you are free to take that position if you want to.  I

don't see that from anything in the presentence report.

Again getting into the stuff about the plea agreement,

I get concerned when I see these things, "and under no

circumstance would he have pleaded guilty to this charging

instrument."  I made very clear at the time Mr. Maccow pled

guilty I would make the determination as to the guideline range

that applies and I would make the ultimate determination as to

the sentence that applies and that the parties' estimate

regarding any guideline calculation was simply an estimate.

I want to make sure there is no confusion, no conflict

of interest, no situation in which Mr. Maccow -- it was clear

1    to me at the time Mr. Maccow pled guilty he understood that

2    plea agreement was not binding on the court.  These other

3    statements here are giving me a little bit of pause.  I want to

4    clarify that.  What is defense counsel's position on this?

5         MR. MACK:  Up until 11:40 pm last night, I expected to

6    walk in here and say the government and the defense agrees that

7    the Probation Department's computation is wrong and the plea

8    agreement, although a Criminal History III rather than IV,

9    should be the guidelines.  And so you can understand why my

10   client -- that is where we thought we were when we were getting

11   ready for sentence today on Tuesday morning.  Now it is a whole

12   different ballgame and maybe the rules don't apply to the

13   government in terms of notice to the defense.

14        The point is, it was the government who said we

15   disagree with Probation and we think the plea should apply.  I

16   am, I am certainly aware, your Honor, the final computation is

17   what it is, but I thought I had a colleague and ally in front

18   of me who was going to stand with me that the plea should

19   stand.  They objected on that basis, and until last night I

20   assumed they would continue their objection.

21        Okay, grow up, Mack.  They changed their mind midnight

22   the day of sentence.  Okay, fine.  Now I understand.  Now I

23   have to take on -- and I plan to take on -- the Probation

24   Department in terms of their calculation, and I think I can

25   make a demonstration at some time that basically hey, they

F49JMACC                    Conference

1   chose to combine these in such a way it is just a denial of

2   acceptance of responsibility.  That is a three-level hit, and I

3   am going to suggest that three-level hit is not appropriate

4   here.  I have a right to challenge the Probation Department,

5   and you have obviously the right to say Mack, you're full of

6   whatever and I am going to let them stand.  Up until last night

7   the government was on my side that acceptance of responsibility

8   should be granted.  Now they're not.  So grow up, Mack.  I

9   agree, I will grow up.

10          But I have a right to challenge that position that my

11   client should get three points for acceptance.

12          THE COURT:  I understand.  I want to make sure it is

13   clear even if both sides came in here and said we are in

14   agreement this is what we think is correct, that that is not

15   binding on the court and it is not binding on the Probation

16   Department.  That is what I am concerned about, the way this is

17   stated, it makes it seem, it almost implies Mr. Maccow was

18   under some impression that if defense counsel and the

19   government were in agreement, that that is kind of what was

20   going to be the case in terms of his guidelines.  It was clear

21   to me at the plea that that wasn't related to him certainly by

22   me.  I want to make sure there was no issue with that.

23          MR. MACK:  Your Honor, believe me, Mr. Maccow and I

24   know that ultimately it is your call, and he knew that at plea

25   and what have you.

```
 1              It was some comfort to the defense that the government
 2      was going to argue in our behalf or at least be on the same
 3      side until last night, and it was something we thought might be
 4      helpful and might actually persuade your Honor that maybe we
 5      were right.  That is no longer true, and I have said it again,
 6      Mack, grow up.  We now need more time to try to convince you
 7      that the Probation Department's calculation which recommended a
 8      10-year sentence for this gentleman is not the one the court
 9      should adopt and that he should at least get the acceptance of
10      responsibility, three level knock-down which Probation and now
11      the government denied him.  That is all we are asking for.
12              We understand it is ultimately your call and we know
13      the Probation Department can be inconsistent.  It is just some
14      of the forces that would have been on our side reversed
15      themselves last night.  That is the way we look at it.
16              THE COURT:  Okay.  I just want to try to get a sense
17      of where we're going to be as we move forward.  Obviously, the
18      sentence isn't going to happen today.  I want to make sure
19      we're on the same page, at least I am on the same page here.
20              Obviously, there are two different things that
21      Probation has done here that I think the defendant objects to,
22      but I am not sure.  There is one thing I know they object to.
23      The Probation Department has come up with a guideline
24      calculation.
25              MR. MACK:  Yes, your Honor.
```

F49JMACC                    Conference

1          THE COURT:  In addition, the Probation Department has

2     made a recommendation in terms of an appropriate sentence.

3     What you've been saying thus far in this submission, and here

4     today has been focused on the recommendation, but obviously we

5     have to at the first point before we get to any sort of what

6     the appropriate sentence should be, have to determine what the

7     guidelines are.

8          So I guess what I am saying, it would certainly be

9     helpful, and I assume this is what the defense is going to do,

10    if you can provide me with some case law or other things

11    regarding the guidelines in terms of why it is because it seems

12    to me you're taking the position -- I am not sure which

13    position it is -- it seems to me you're taking the position the

14    obstruction of justice enhancement should not apply in this

15    case period, and then you're also taking the position that even

16    though if it does apply, that the acceptance of responsibility

17    should still be given.

18          I want to get clarification from you as to what your

19    position is because in your submissions you start talking about

20    the way they grouped counts and the other things in terms of

21    the acceptance of responsibility and obstruction and the like.

22          What is your position on this?

23          MR. MACK:  My position on that is that three levels

24    for acceptance of responsibility should be mine, and there is

25    plenty of case law on that and I will get a court case.  We

1    just found out the government had been on our side on that up

2    until midnight last night, but changed their view.  Shame on me

3    not having those cases today, but there are plenty of cases in

4    the circuit on what is sufficient for acceptance.  I intend to

5    get those, your Honor, and I didn't know that I had another

6    adversary on that point.  I do, fine, that is why we are asking

7    for time.

8            Now, with respect to the grouping decisions that were

9    made, first of all, any adjustments are in the court's

10   discretion, and I am perfectly able to argue hey, how many

11   counts are you going to add two points to and also add an

12   obstruction count if you group them one way or the other, the

13   computation is different and actually works out better for the

14   defendant if you compute them differently.  You don't have to

15   compute them, each count additional two points plus an

16   obstruction.

17           If you analyze the conduct of this defendant, which is

18   something that I would argue is also an impact or has an impact

19   on that adjustment, he had a very discrete role, a very modest

20   role.  He is Defendant No. 10.  He is an individual who is not

21   out there doing certain things, and now I need to make more

22   argumentation on those, your Honor, which I didn't realize

23   until late yesterday and that is why I am asking for time.

24           The simplest way to look at it at least for three

25   levels, which is of great consequence, is now I have to

F49JMACC                    Conference

1    convince your Honor and go into combat with Probation and now

2    the government on that which, as I say, I have said it too many

3    times, were on my side yesterday.  I am not trying to get out.

4    The plea agreement is what it is.  The plea agreement could be

5    different.  Maybe I learned lessons here.  This plea agreement

6    is very aggressive, and we are in it and I am not trying to

7    walk away from it, and I certainly recognize that the court

8    does need to resolve what are the guidelines in this case.

9           I will do my best to set forth clearly what it is, but

10   three of those points are acceptance, and I will get the case

11   law for those.

12          THE COURT:  Okay.  One other thing I think the parties

13   should think about, I guess I need to give the parties notice

14   of is obviously if there are multiple instances of obstruction

15   of justice, the court certainly has the power to upwardly

16   depart or vary under the guidelines to a range above that

17   suggested by the guidelines if, in fact, there are multiple

18   instances of obstruction of justice.

19          Obviously, I am not saying he has done that at this

20   point, but if Mr. Maccow submits false documents or the like,

21   obviously that could be grounds for finding additional

22   instances of obstruction.  It would certainly be something that

23   I could take into consideration.  One thing that I guess I'll

24   give counsel notice of, I am wondering about earlier on in this

25   case, in one of the early court proceedings here, Mr. Maccow

1    made some statements in court on the record.

2           I have tried to advise Mr. Maccow that he didn't need

3    to make any statements, but he decided that he wanted to.  I

4    said he can speak to his attorney, it is probably a better idea

5    to do that, but he chose to do that.  I want to bring some of

6    this to the parties' attention.  This is from Page 11 of that

7    transcript which was filed, the transcript was filed on April

8    16th, 2014, and it is Document 72.

9           At that time Mr. Maccow, who was represented or

10   Mr. Brill was standing in for Mr. Maccow, says your Honor on

11   behalf of Mr. Maccow, it is Peter Brill, Mr. Maccow has asked

12   permission to address the court on a matter.  I said okay.

13   Just before you address me, you have to understand anything you

14   say here in open court can be used against you.

15          Mr. Maccow said yes.

16          I said in a court of law you may want to speak to your

17   attorney first.

18          Mr. Maccow said I want to address the court right now.

19   I know exactly what I want to say to the court.

20          I said okay.

21          Mr. Maccow said yes, I want to say like me, Andy

22   Maccow personally, I have a very strong drug habit.  I use a

23   lot of drugs.  I used from marijuana to cocaine.

24          I interrupt.  Hold on, hold on, hold on.  Again you

25   may want to speak to your attorney before you say these things.

F49JMACC                    Conference

1          Mr. Maccow says I don't want to speak to him.  I just

2     want to say it.

3          I say before you go on, let me just make sure you're

4     aware of this, all right?

5          Mr. Maccow said I'm aware of it.

6          I said let me be sure you're aware of where we are

7     right now in this proceeding.  What we're doing right now, this

8     is not a trial, this is not a trial.  When there is a trial,

9     there will be a jury here presiding over that trial making

10    factual determinations based on what is going on at trial.

11         As a criminal defendant, you do not have a burden of

12    proof in this case.  The government has the burden of proof at

13    all times.  At trial the government would have to prove your

14    guilt beyond a reasonable doubt.  You have a right against

15    self-incrimination.  You do not need to say anything.  If you

16    say anything, whatever you say can be used against you in a

17    court of law.

18         Mr. Maccow said I understand.

19         I go on.  Even if you were, in fact, guilty, you don't

20    have to plead guilty.  You have a right to remain silent, go to

21    trial and force the government to prove your guilt beyond a

22    reasonable doubt.  If the government failed to prove each and

23    every element of the crime charged against you beyond a

24    reasonable doubt, the jury would have to find you not guilty.

25    So I want you to listen to what you have to say, but I want to

1    urge you, make sure you understand that this is not a trial and

2    if you're trying to tell me something that is very --

3                Mr. Maccow interrupts.  I understand and I want to

4    address the court.

5                I continue.  If you're telling me other things that

6    may possibly incriminate you or make your case worse, that is

7    not a good idea.  You may really want to talk to your lawyer

8    before doing that.

9                Mr. Maccow says no, no, no.  I understand everything

10   you said, everything you just said right now.  I still want to

11   address the court.  Can I stand up and address the court?

12               I reply, you can address me.  You don't need to stand

13   up.  Go ahead.

14               Mr. Maccow:  I have a very bad drug habit.  The night

15   of my incarceration I was, I didn't even know myself, I was --

16               I interrupt.  Again here is the thing I want to

17   express to you.  I want to make sure you truly understand.

18               Mr. Maccow says yes, I understand.  What is happening

19   here, I truly understand the way this process works, all right?

20   All right.  Mr. Maccow says yes.

21               I say I'm not in a position where I can give you legal

22   advice.  You should talk to your lawyer about that.

23               He says I understand.

24               We continue for a little bit longer.  I will say this.

25   I say but as I explained to you, the government has the burden

1   of proof.  The government has an obligation to turn over a lot

2   of discovery that has been discussed.  There are things that

3   you have in your mind that are not written down somewhere that

4   might help you in trial.  Generally speaking it is better, it

5   is a better idea to hold on until the trial because what you're

6   saying now is on the record and --

7              Mr. Maccow says I want it to be.

8              I say the government can hear this and use it against

9   you.

10             Mr. Maccow says I'm okay with it.

11             And here is where Mr. Maccow continues:  You know,

12  like on the night that I got incarcered, I wasn't in my right

13  state of mind, so most of the questions that the agents was

14  asking me, I wasn't understanding them.  So I signed some

15  papers without me being in my right state of mind, you know

16  what I'm saying?  It was like I was tricked on signing some

17  paper that I didn't even know what I was signing for.  Do you

18  understand what I am trying to say, your Honor?

19             I just want it to be on the minutes that at that

20  moment I didn't know what I was doing.  I wasn't in my right

21  state of mind.  I don't want for the District Attorney to calm

22  me down for no questions.  I don't want to cooperate with

23  nobody.  I don't want to snitch on nobody.  I just want my

24  fellow co-defendants to know over here that I'm not trying to

25  do that, you know what I'm saying?

1          I say okay.  Thank you.  You have had an opportunity

2   to address me.  That is fine.  Thank you.

3          Mr. Masimore says some things.  I'll put it on the

4   record Mr. Masimore says your Honor, I would just note the

5   appropriate time for such a motion would be during the motion

6   schedule with an affidavit under oath.  I would caution

7   everybody that we have evidence that shows that he was of

8   complete sound mind on the night of his arrest, so any

9   affidavit would not be truthful.

10         In any event, your Honor, it appears from what is

11  going on here that this defendant who just spoke may be under

12  some pressure from the colleagues sitting around him.  I am a

13  bit concerned about that, your Honor, given the unusual nature

14  of the outburst by the defendant without his counsel.  I am not

15  sure what to do about it, but it is certainly highly unusual

16  and gives rise to some concerns.

17         I say okay, thank you.  Again hold on before, there is

18  no need to say anything else again.

19         Mr. Maccow says I'm saying I'm not under no pressure.

20  Nobody pressured me to do nothing.

21         I say hold on.  This is not a trial, and at this point

22  you're making -- again, this is not the right time for that

23  point.  That is why again it is usually best to remain silent

24  and let your lawyer do the talking for you because what you've

25  done at this point -- hold on, hold on, hold on, hold on -- and

F49JMACC                      Conference

1     hold on a second.

2            Then there is some more dialog.  It goes to Page 17

3     and some other counsel speak.  I say hold on, hold on, all of

4     you, this is not an opportunity for you to -- and Mr. Maccow

5     continues:  No.  I just want to address the court.  We came up

6     with the conclusion, all 10 defendants, we want a speedy trial.

7     I don't know why this should be adjourned.

8            Please make sure you understand something here.

9            Defendant Maccow:  We understand everything.  I say

10    listen, obviously as you can tell, you're all facing some very

11    serious charges.  You have to listen.

12           Another defendant says we're not dumb.

13           Actually, let me rephrase that.  That was a defendant.

14    It wasn't Mr. Maccow that said.  We want to address the court.

15    We came up with a conclusion all 10 defendants want a speedy

16    trial.  I don't know why this should be adjourned.

17           Mr. Maccow says he -- and Mr. Maccow says, she wants

18    to sit and smile at me and she wants to come visit these guys.

19    They don't know what the hell is going on with the case.  I am

20    going to speak for them.  This is my life.  They're not going

21    to fuck with it.  I'm done.

22           So those were the statements Mr. Maccow made early on

23    in this case.  I am wondering, it may be helpful to have

24    counsel address this since we are going to adjourn this,

25    whether an obstruction -- you can address this at a later

1    time -- whether or not an obstruction of justice enhancement

2    should be applicable for that conduct, as which seemed to be

3    designed to send a message to all the co-defendants that not

4    only was he not cooperating, but that none of them should

5    cooperate.

6           Again it is just something that I think counsel may

7    need to be prepared to address at a future date.  If you wish

8    to address some of that now, you may.

9           MR. MACK:  First of all, I substituted for Mr. Brill.

10          I certainly have spent a lot of time with Mr. Maccow,

11   and that is the reason why I asked the court to have him

12   examined as it was, and I certainly will be arguing at sentence

13   that Dr. Paradise's report provides some insight into this

14   individual's conduct and his needs going forward, and I

15   certainly, were I here at that time, I would not have

16   encouraged him to do that, but to sublimate that he was trying

17   to do anything other than avoid perhaps not the wisest way,

18   some danger of some kind, some perceived danger.

19          Was it the best way to do so?  I don't know.  I might

20   have to talk to Mr. Brill to find out whether that was ever

21   discussed.  I just don't know the answer, but I will certainly

22   ask the court, given those facts alone, to add that situation

23   which the government mentioned last night I noticed for the

24   first time, at least in a sentencing context, basically would

25   be somewhat unfair to this defendant as he is.

1          I think his current, shall we say, needs and with the

2   Micro Program Dr. Paradis talked about, he might be mentally

3   ill, the court's consideration whether further punishment for

4   this gentleman is appropriate, and I will make that argument in

5   the future.  That will be my first shot of that.

6          THE COURT:  I know counsel wasn't here and I wanted to

7   make counsel aware of that.  It does seem -- again I haven't

8   made up my mind what I wish to do about that -- it seems that

9   could serve as the basis for an obstruction of justice

10  enhancement.

11         Again typically under the guidelines there is only one

12  enhancement, but it could serve as another count of obstruction

13  of justice -- not count, another incident of obstruction of

14  justice which would entitle the court to upwardly depart or

15  impose a variance sentence above that suggested by the

16  guidelines.  It certainly gives some insight as to where the

17  appropriate sentence might be, and this is not a situation in

18  which there would be a lot of controversy as to what happened.

19         We have the transcript, and I observed that.  I was

20  here when that happened.  It is something to think about as we

21  deal with this obstruction of justice enhancement.  Again it

22  seems to me counsel is free, if you wish to have a hearing on

23  this issue to try to demonstrate that when the obstruction

24  happened, it was sort of an unplanned thing and he didn't go

25  out planning to meet this individual, it happened on the spur

1   of the moment as opposed to him forming some deliberate plan,

2   you can certainly have a hearing on that.

3           I guess again my thoughts are that if he provides any

4   sort of false documents or false testimony or makes false

5   statements to the court or encourages counsel to make false

6   statements to the court, obviously those are other instances of

7   obstruction of justice.  Those are things that I can consider

8   as well.  We can deal with that at a future date.

9           It sounds like counsel wants to have a hearing and

10  wants to have Mr. Maccow testify at that hearing about this

11  obstruction enhancement, I suppose, to try to -- as further

12  argument for the court not to take away acceptance of

13  responsibility, but just to simply impose obstruction, although

14  I don't want to put words in counsel's mouth.

15          Counsel, my understanding is you do wish to have a

16  Fatico hearing?

17          MR. MACK:  No.

18          THE COURT:  You wish to have to have a hearing for

19  Mr. Maccow to testify about the-obstruction.  Is that correct?

20          MR. MACK:  I am not certain.  Mr. Maccow is an

21  individual and there are many factors to evaluate, whether he

22  can speak to these and what have you.  I have spent many hours

23  describing how significant it is for his credibility to not be

24  put it at risk at any time.  That is my problem, as counsel.

25  It troubles me greatly that the court is alluding to an event

1   for this individual that could further put this person in

2   jeopardy for I call a warehouse sentence.

3           Those things concern me, but the court should not have

4   any concern that I would as his counsel ever encourage him to

5   take any kind of risk of false statement or false certainly.  I

6   am not sure when the government -- and this is one of the

7   issues we talked about on suppression -- he will say wait a

8   minute, he said this and said that.  I want to make certain we

9   don't hurt ourselves more by that situation.

10          My client tells me something, and I go over it as many

11  times as I did, I believe him and I believe him here.  I

12  wouldn't have done it and put those objections in if I didn't

13  feel that way.

14          THE COURT:  Again I want to make sure, I am not saying

15  Mr. Maccow at this point has said anything that is not true.  I

16  am not making any of those kind of determinations.  I want to

17  make sure he is aware of that, that if he were to do something

18  like that, if he were to make some statements that I deemed to

19  be untrue, that would give me further ground to enhance his

20  sentence for obstruction of justice or obstructive behavior and

21  may be further grounds.  I will wait to get the case law from

22  you on this, but it also may serve as further grounds to deny

23  acceptance of responsibility as well.

24          Why don't we do this then.  It sounds like at some

25  point defense counsel certainly indicated a need or a desire to

F49JMACC                    Conference

1    have a Fatico hearing, so perhaps it makes sense to adjourn

2    this matter for such hearing.  In the interim, if defense

3    counsel decides you don't want to have a hearing or the

4    government decides they don't wish to have a hearing, we don't

5    have do that.

6          We probably need a hearing because there does seem to

7    be some real disagreement between the parties in terms of what

8    happened with the obstruction of justice.  There doesn't seem

9    to be disagreement the obstruction of justice enhancement

10   applies.

11         MR. MACK:  There is no objection to the fact he pled

12   guilty to the obstruction count.  There will be objection that

13   you hit him -- the Probation Department, now the government --

14   has decided that he should also get two level bump in each of

15   the other two counts along with it.  That is their position.

16         I think I have a chance at least to try to describe to

17   your Honor better who this individual is, and he does require

18   time to speak to.  He is not a person who is comfortable in the

19   courtroom, let's put it that way.  I need to spend time with

20   him.  I don't know if the word "Fatico" came from my lips, but

21   if it did, I am not sure that is what is necessary.

22         THE COURT:  That is what I am trying to get a sense

23   of.  It is one thing if you wish to have a hearing so that I

24   have a full grasp of Mr. Maccow and what Mr. Maccow did out

25   there that night in terms of the obstructive behavior.  That is

1    fine.  In terms of your argument that the obstruction

2    enhancement shouldn't apply to each of the counts of conviction

3    in terms of grouping, that seems to me to be a purely legal

4    argument.  It doesn't require any sort of fact-finding.

5             MR. MACK:  Your Honor, every adjustment is subject to

6    discretion of the court, okay?

7             And my view is that I am not trying to say hey, the

8    plea agreement covers it.  I get that.  I certainly understand

9    the court and the Probation Department to say they're wrong.

10   In terms of deciding whether two adjustments plus an

11   obstruction count is appropriate given what the guidelines are,

12   what the guidelines are is something that is a factual

13   determination as well in terms of what was his conduct, what

14   were the facts and circumstances under 3553 and should they

15   affect whether or not he should get above the plea agreement

16   and accept what Probation is asking for.  That is a

17   discretionary matter for the court.

18            I am going to argue that is within your discretion and

19   try to convince the court in this situation with this defendant

20   on these facts, that discretion should be exercised not to bump

21   him up higher than the government agreed up until recently and

22   deny him the acceptance.

23            THE COURT:  Again I think just to be clear, I want to

24   be sure that the parties understand each other's positions, as

25   I understand the parties' positions, my sense is that the

F49JMACC                    Conference

1    government and the defense -- well, the government certainly

2    takes the position that it seems to me, based on your

3    submissions, that regardless of the guideline range that I

4    determine applies in this case, the government's position is

5    that a sentence within that range of 92 to 115 months is

6    appropriate.  I think that is the government's position.

7            Am I correct there?

8            MR. BUCKLEY:  That's correct, your Honor.  We are

9    abiding by the terms of our plea agreement here and we are

10   seeking only a sentence within the range as stipulated in the

11   plea agreement.

12           THE COURT:  So I think that that is something that may

13   have been the cause of some confusion because again while the

14   parties may stipulate to whatever they want to in their plea

15   agreement, again, as I have said ad nauseam, the plea agreement

16   is not binding on me and there are only certain sort of

17   tortured readings of the guidelines the parties may make.

18           The parties may make any kind of argument they wish to

19   make.  If the government feels -- I don't know what their

20   position is -- if the government feels the Probation

21   Department's guideline determination is correct, but

22   notwithstanding that it seems that is the government's

23   position, that they feel that they can't in good faith say that

24   basically there may have been an error in the estimation under

25   the plea agreement and that the Probation Department may have

1    it actually correct in terms of the guideline range, but

2    notwithstanding that, the government is standing by the

3    agreement, which again is not binding on the court, to that

4    extent the government is still taking the position that a

5    sentence within that range of 92 to 115 months is appropriate.

6         MR. MACK:  I get that, your Honor.

7         I would simply say, according to the terms of the plea

8    agreement, we agree that there may be a different criminal

9    history category computation, and we, and we said we think it

10   is IV, but it actually turns out to be III.  The government

11   agrees with that.  So if the plea agreement -- which, silly

12   me -- applies, it would be Level 26, Criminal History III.

13   That is what the plea agreement says in essence.

14        So the criminal history level would go down, and what

15   really, if you comply with the plea agreement's terms, it is

16   26, Level III, 78 to 97 months.

17        THE COURT:  Again a plea agreement can't do all of

18   that.  I want to make sure there is no, no misunderstanding

19   there.  The guidelines are what the guidelines are.  I have to

20   make that determination.  I want to hear from both parties in

21   terms of making that determination.  I want to look at what the

22   Probation Department has, but I have to make that

23   determination.

24        If, as sometimes happens in plea agreements, the

25   parties miss something entirely and the guideline range is very

1    different than what they anticipated at the time they entered

2    into the agreement, so be it, right?  The parties have their

3    remedies under that, but again that is not something binding on

4    the court.  So I want to make sure that there is no confusion

5    there, that is fine.  That is where we are.

6            MR. MACK:  There is no confusion, your Honor.

7            The plea agreement, if you read it, it says hey, the

8    criminal history could be computed otherwise, and so it is what

9    the agreement says.  I am already out.  I understand.  My

10   opportunity to stand up with the government and say your Honor,

11   both sides, both parties think the plea agreement should abide.

12   That would be Level III and would be Level 26.  That is what it

13   says.

14           But I know the court's going to instruct me.  I fully

15   understand I have a new burden and additional things to

16   overcome and that is my job and I will try to do that.

17           THE COURT:  I guess again we make be talking again

18   about a distinction without a difference here.  The appropriate

19   thing, if the government was in agreement with you, the

20   government could say that we, as the government -- or the

21   government that they, as the government, agree that two points

22   or three points for acceptance of responsibility should apply.

23   They may do that based on the plea agreement.  They may do that

24   based on whatever.  They can do whatever they wish to.  Their

25   reasoning can be whatever it is.  Their real motive behind that

 1  can be whatever it is, but I've still got to make that

 2  determination what the guidelines are.

 3       The fact it is in the plea agreement, the government

 4  can't promise you, and that is over and over, the government

 5  can't promise you what the guideline range is going to be, nor

 6  can they promise you what the sentence is going to be.  That is

 7  up to me.

 8            MR. MACK:  I have that, your Honor.

 9            THE COURT:  That is where we are.  Why don't we

10  adjourn this.  Do you wish to have a hearing as well on this

11  issue?  Obviously, if one side wants to have a hearing, we'll

12  have a hearing.  I want to make sure we are not in a situation

13  where the defense decides they don't want to have a hearing,

14  but the government does.

15       What is the government's position on a Fatico hearing

16  otherwise on this obstruction point?

17            MR. BUCKLEY:  I am a bit adrift here to put it lightly

18  because I think the arguments as your Honor noted are really

19  focused on the legal arguments about whether under the

20  guidelines certain enhancements should or should not apply.

21       Now, Mr. Mack continues to try to weave into those

22  legal determinations what the guidelines do or do not say,

23  these claims from his client.

24       Now, if the defendant intends to take the stand, then

25  I think a Fatico hearing is necessary.  If the defendant under

1    oath intends to recant the statements he made in his

2    post-arrest, if the defendant intends to contradict the

3    statements he made in his post-arrest that he made during his

4    plea allocution and that he made in the presence of counsel

5    during his presentence investigation, then, yes, I do think a

6    Fatico hearing is necessary.

7         If, however, Mr. Mack does not intend to put the

8    defendant on the stand and if, however, the defendant does not

9    intend to bring forth competent evidence that otherwise

10   contradicts those three consistent accounts of what occurred,

11   then, no, a Fatico hearing is not necessary for all the reasons

12   your Honor noted.

13        The defendant had pleaded guilty to obstruction.

14   There is no dispute about that plea.  There is no dispute that

15   he stands convicted of that, and it seems that the dispute then

16   centers upon the effect that that conviction has upon his

17   guideline calculation which I don't think is a matter of fact.

18        THE COURT:  Let's adjourn this.

19        Again, as I indicated before, counsel should be

20   prepared at the next hearing, whether we're having a Fatico

21   hearing or going straight to sentence, to be prepared to

22   address this issue that I've raised regarding the possibility

23   of an upward departure.  Again I have an open mind on that or a

24   sentencing variance above that suggested by the guidelines,

25   whatever that guideline range turns out to be based on the

1    conduct here in court.  Counsel should be ready to address that

2    as well.  So can we get a date, Tara?

3             MR. BUCKLEY:  Judge, I apologize for interrupting.

4             Just so the record is clear, the government disputes

5    Mr. Mack's reading of the plea agreement as far as the criminal

6    history category and what the agreement says the sentencing

7    range is.  The four corners of the agreement are clear, and

8    that is what we are abiding by.

9             (Off-the-record discussion)

10            THE CLERK:  Friday, May the 8th, at 2:00 pm.

11            THE COURT:  Does that work for everyone?

12            MR. MACK:  I wasn't certain I would have to say this.

13            I will be hospitalized for a heart valve operation and

14   operated on on May 4th, which would put me, despite what

15   happens today, I think Mr. Maccow would like me to stay.  I

16   would like to stay, but I am not going to be appear in the

17   month of May at all.

18            (Off-the-record discussion)

19            THE CLERK:  Thursday, April the 30th, at 2:30.

20            THE COURT:  Does that give counsel enough time?

21            MR. MACK:  The only thing I would ask, that the

22   government not serve me at 11:40 at night with their papers on

23   the day of the hearing.  That is my only request.  I will try

24   to -- pardon the --

25            THE COURT:  Does that work for the government?

F49JMACC                          Conference

1          MR. BUCKLEY:  It may be that May 8th will work better,

2     but considering Mr. Mack's situation, medical concerns, we'll

3     make it work, Judge.

4          THE COURT:  All right.  We'll adjourn sentence till

5     then.  Is there anything else we need to deal with today,

6     counsel?

7          MR. BUCKLEY:  Not from the government, thank you.

8          MR. MACK:  Not from the defense, your Honor.

9          THE COURT:  Thank you very much.

10          Actually, while we're here, again I will state,

11     counsel is free to make any argument counsel wishes to make.  I

12     didn't see anything in the probation report that made it seem

13     that Probation had some sort of grudge against Mr. Maccow, but

14     I will give Probation a chance to say anything you want instead

15     of sitting here and taking shots all day.

16          Is there anything Probation would like to say

17          MS. FRANKELIS:  Your Honor, I appreciate the offer to

18     say something.  I have calculated the guidelines as I believe

19     they are accurate according to the guidelines manual, and my

20     sentencing recommendation was within the range that I

21     calculated which I believe to be correct, and it has nothing to

22     do with anything personal toward Mr. Maccow.  It is just what I

23     believe is the just and fair and right sentence for this

24     defendant.

25          I understand that there are issues that Mr. Mack

F49JMACC                         Conference

1    presented, but there is nothing that I have seen that make

2    Mr. Maccow appear to have extraordinary situations that would

3    warrant a sentence outside of the range, and I have recommended

4    a sentence at the bottom of the range that I believe to be

5    accurate.

6            THE COURT:  Okay.  Thank you.  Anything else from the

7    government or defense?

8            MR. BUCKLEY:  No, your Honor.

9            MR. MACK:  No, your Honor.

10           THE COURT:  Have a good day.

11           (Court adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25